IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  06-cv-01179-EWN-KLM

ROBERT WHITE,

        Plaintiff(s),

v.

D. THARP, M.D.,
FRANK CORDOVA,
CHRISTOPHER LAMB,
J. NEGRON,

        Defendant(s).
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

        This matter is before the Court on **Defendants Tharp, Lamb, and Negron's**

**Motion to Dismiss** [Docket No. 21; filed May 22, 2007] ("Motion to Dismiss").  Pursuant

to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO.L.Civ.R. 72.1.C., the matter has been referred

to this Court for recommendation. The Court has reviewed the Motion to Dismiss, Plaintiff's

Response [Docket No. 24; filed June 7, 2007]; Defendants' Reply [Docket No. 26; filed

June 20, 2007]; Plaintiff's Surreply [Docket No. 27; July 23, 2007], the entire case file, and

the applicable law and is sufficiently advised in the premises.  For the reasons set forth

below, the Court recommends that the Motion to Dismiss [Docket No. 21] be **GRANTED**.

**I.      Statement of the Case**

**A.      Legal Standards Applicable to Plaintiff's Claims**

**1.      Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)**

Subject matter jurisdiction is the court's authority to hear a case and cannot be waived. *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).

Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. *See Holt*, 46 F.3d. at 1003. "In a factual attack . . . the movant goes beyond the allegations in the complaint and challenges facts upon which subject matter jurisdiction depends." *Id.* at 1002. Further, "[w]hen reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* A court's consideration of evidence outside the pleadings, including affidavits, will not

convert the motion to dismiss to a motion for summary judgment under Rule 56. *Id.*

### 2. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

When deciding a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. *Erickson v. Pardus*, _____ U.S. _____, 127 S.Ct. 2197 (2007). I note that Fed. R. Civ. P. 12(b)(6), not Fed. R. Civ. P. 12(b)(1), is the proper vehicle for dismissing a complaint that, on its face, demonstrates the existence of an affirmative defense, such as filing outside the applicable statute of limitations period. *See, e.g., Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1311, fn. 3 (10th Cir. 1999) *abrogated on other grounds by Boyer v. Cordant Techs.*, 316 F.3d 1137, 1140 (10th Cir. 2003); *see also Aldrich v. McCulloch Props.*, 627 F.2d 1036, 1041, fn. 4 (10th Cir. 1980). In addition, when the dates provided in a complaint clearly demonstrate that the right to sue has been extinguished, "the plaintiff has the burden of establishing a factual basis for tolling the statute." *Aldrich*, 627 F.3d at 1041, fn. 4 (citations omitted). However, as a preliminary matter, I find that Defendants' Rule 12(b)(6) motion to dismiss must be converted into a motion for summary judgment.

"A 12(b)(6) motion must be converted into a motion for summary judgment if 'matters outside the pleadings are presented to and not excluded by the court' and 'all parties . . . [are] given a reasonable opportunity to present all material made pertinent to such a motion by [Fed. R. Civ. P. ] 56.'" *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d

1381, 1384 (10th Cir. 1997) (quoting Fed. R. Civ. P. 12(d)); *see also Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 713 (10th Cir. 2005) (holding that where the District Court relied on facts presented in affidavits, a Rule 12(b)(6) motion was properly converted into a motion for summary judgment).

In the instant case, both Defendants and Plaintiff have submitted documents outside the pleadings in support of their arguments. *See, e.g., Motion to Dismiss*, Ex. C [Locke Declaration]; Ex. D [Negron Declaration]; Ex. E [Tharp Declaration]; Ex. F [Lamb Declaration]; *Response*, White Declaration [Docket No. 25]; *Reply*, Ex. A-1 [Locke Declaration]; Ex. A-2 [Blank Declaration]; *Surreply*, Ex. 1. When a court converts a Rule 12(b)(6) motion into a motion for summary judgment, "it must provide the parties with notice so that all factual allegations may be met with countervailing evidence." *Burnham*, 403 F.3d at 713 (citing *Nichols v. United States*, 796 F.2d 361, 364 (10th Cir. 1986)). However, this required notice may be "actual or constructive, and in some circumstances, courts have concluded that the submission of evidentiary material by the movant, the nonmovant, or both of them constitutes sufficient notice." *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996) (citing *Nichols,* 796 F.2d at 364 ( "[F]ailure to give notice is not reversible error if a party does not attempt to exclude the supporting documents, but files its own sworn affidavits in response") (citation omitted). *See also Lamb v. Rizzo*, 391 F.3d 1133, 1137, n. 3 (10th Cir. 2004) (finding that conversion of a Rule 12(b)(6) motion into Rule 56 motion without notice was not prejudicial to a *pro se* plaintiff where he failed to object to defendant's exhibits and filed his own exhibits in response);

*Klover v. Antero Healthplans*, 64 F.Supp.2d 1003, 1007 (D.Colo. 1999) (finding that "when a party submits material beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the parties puts them on notice that the judge may treat the motion as a Rule 56 motion") (citations omitted)).

As Plaintiff has both failed to object to the exhibits attached to Defendants' Motion to Dismiss as well as filed his own exhibits in response, I find that he has been provided with adequate notice that the Motion to Dismiss may be converted into a motion for summary judgment. *See Lamb*, 391 F.3d at 1137; *Klover*, 64 F.Supp.2d at 1007. Further, neither party has argued that the court is prohibited from considering any of the documents before it nor claimed an insufficient opportunity to present any material pertaining to the issue. Accordingly, I will consider Defendants' Motion to Dismiss pursuant to the summary judgment standard, as contained in Fed. R. Civ. P. 56.

The purpose of a summary judgment motion, unlike that of a motion to dismiss, is to determine whether there is evidence to support a party's factual claims. In reviewing a summary judgment motion, the court is to view the record "in the light most favorable to the nonmoving party." *Thournir v. Meyer,* 909 F.2d 408, 409 (10th Cir.1990) (citation omitted). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works of Colorado, Inc. v. City & County of*

*Denver,* 36 F.3d 1513, 1517 (10th Cir.1994). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The moving party bears the initial burden, by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, to demonstrate the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. *Id.* at 324. Unsupported conclusory allegations thus do not create a genuine issue of fact. *See United States v. Simons,* 129 F.3d 1386, 1388-89 (10th Cir.1997) (citing *Allen v. Muskogee, Okla.,* 119 F.3d 837, 843-44 (10th Cir.1997)). Instead, "sufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Id.* The court may only consider admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.,* 756 F.2d 1467, 1474 (10th Cir.1985).

Finally, because Plaintiff here is proceeding *pro se*, the Court construes his pleadings liberally. *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003). Even so, Plaintiff still retains "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This burden remains because a "*pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the

6

court is to determine whether he makes out a claim on which relief can be granted." *Id.* A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

### B.    Undisputed Facts

The Court finds the following facts to be essentially undisputed. At the time of filing, Plaintiff Robert White was incarcerated at the Federal Correctional Institution in Milan, Michigan. Plaintiff filed a *pro se* prisoner complaint pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) on May 9, 2006, in the United States District Court for the Eastern District of Michigan. On June 13, 2006, that Court dismissed Plaintiff's claims as to the Michigan defendants and transferred the remaining claims against Colorado defendants to the United States District Court for the District of Colorado. By Order dated June 22, 2006, Plaintiff was directed to cure certain deficiencies in his Complaint [Docket No. 4]. Plaintiff filed his corrected Prisoner Complaint on July 10, 2006, alleging that Defendants injected him with an unknown medical substance without his consent, resulting in continuous health problems [Docket No. 5]. He also alleges that the Defendants refused to provide him appropriate medical care. Plaintiff contends that these actions violated his Eighth Amendment rights. *Id.*

Plaintiff was incarcerated at the Federal Correctional Institution ("FCI") in Florence,

Colorado from October 21, 1999 until June 2007. *Motion to Dismiss*, p. 4. Plaintiff alleges that, on January 2, 2001, the Defendants directed him to visit the FCI Florence medical clinic in order to receive a tuberculosis skin test. *Complaint*, p. 5. However, it is Plaintiff's contention that, instead of receiving a tuberculosis skin test, he was "trickishly inject[ed] . . . with an unknown medical substance." *Id.* Plaintiff alleges that, due to this injection, he has since developed health problems including diarrhea, eye problems and a fungal infection of his toenails. *Id.* Plaintiff finally alleges that Defendants were deliberately indifferent to Plaintiff's resulting health problems and refused to prescribe certain medications in order to resolve his toenail fungal infection. *Id.* at 5-6. Plaintiff requests compensatory and punitive damages against each Defendant in his or her individual and official capacities. He further requests that the Defendants be compelled to disclose the actual substance with which he was injected, that Defendants be compelled to provide proper medical treatment to him, that Defendants be enjoined from retaliating against him or his "pro se assistant", and that Defendants be enjoined from using inmates as medical experiments or injecting them with unknown substances.

Defendants Dr. Denny Tharp, Christopher Lamb and Jose Negron have filed a Motion to Dismiss.[1] In support of their Motion, they assert three arguments: (1) Defendants are entitled to sovereign immunity on the claims brought against them in their official capacities; (2) Colorado's statute of limitations bars Plaintiff's claims against

---

[1] As of the date of this Order, Defendant Frank Cordova has not been served with the Summons and Complaint nor has he waived service thereof.

Defendants in their individual capacities; and (3) Defendants are entitled to qualified immunity on the claims brought against them in their individual capacities.

## II.    Discussion

### A.    Official Capacity Liability

Plaintiff asserts claims against Defendants in their official capacities. *Complaint*, p. 10. If a federal prisoner incarcerated in a Bureau of Prisons ("BOP") facility alleges a constitutional deprivation, a *Bivens* claim may lie against the individual officer, subject to the defense of qualified immunity. *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 72 (2001). However, this claim may not lie against the officer in his or her official capacity. *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005). That is, "[t]here is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity. Instead, any action that charges such an official with wrongdoing while operating in his or her official capacity as a United States agent operates as a claim against the United States." *Simmat*, 413 F.3d at 1231 (citing *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001)). The doctrine of sovereign immunity precludes a *Bivens* action against the United States or any agency thereof. *See, e.g., Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002). The United States is immune from suit unless it expressly consents to be sued. *United States v. Testan*, 424 U.S. 392, 399 (1976).

Plaintiff's claims pursuant to *Bivens* against Defendants Tharp, Lamb and Negron in their official capacities are barred by sovereign immunity and are thus properly dismissed with prejudice for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P.

12(b)(1).

**B.      Individual Capacity Liability**

**1.      Bivens Claims and Statute of Limitations**

Defendants further argue that Plaintiff's claims are barred by the applicable

Colorado statute of limitations, C.R.S. § 13-80-102. *Motion to Dismiss*, p. 11. It is well

established that "a *Bivens* action is subject to the limitation period for an action under

42 U.S.C. § 1983, and that limitation period is set by the personal injury statute in the

state where the cause of action accrues." *Roberts v. Barreras*, 484 F.3d 1236, 1238

(10th Cir. 2007) (citing *Industrial Constructors Corp. v. U.S. Bureau of Reclamation*, 15

F.3d 963, 968 (10th Cir. 1994) and *Garcia v. Wilson*, 731 F.2d 640, 651 (10th Cir.

1984)). Because the violations alleged in the Complaint occurred in Colorado, the

Colorado statute of limitations applies. In Colorado, the limitation on a personal injury

claim is two years. *See* C.R.S. § 13-80-102(g) (creating a two-year limitation period for

"all actions upon liability created by a federal statute where no period of limitation is

provided in said federal statute" and for "all other actions of every kind for which no

other period of limitation is provided"); *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir.

1993) (applying C.R.S. § 13-80-102 to a § 1983 claim).

However, "[a]lthough state law establishes the statute of limitations, federal law

determines when plaintiffs' federal *Bivens* claims accrued." *Van Tu v. Koster*, 364 F.3d

1196, 1199 (10th Cir. 2004) (citation omitted). In *Van Tu*, the Tenth Circuit held that

pursuant to federal law, "the statute of limitations on a *Bivens* claim begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Id.* (internal quotation marks and citation omitted); *see also Kripp v. Luton*, 466 F.3d 1171, 1175 (10th Cir. 2006) (holding that "[s]ection 1983 claims accrue, for the purposes of the statute of limitations, when plaintiff knows or has reason to know of the injury which is the basis of his action").

In the instant case, Plaintiff's claims principally arise from an injection that was administered to him at the FCI in Florence, Colorado on January 2, 2001. *Complaint*, p. 5; *Reply*, p. 4. Plaintiff has submitted one of his medical records, dated January 3, 2001, as Exhibit A to his Complaint [Docket No. 5]. This medical record states that on January 2, 2001, "[d]ue to a human error," Plaintiff was "given a tetanus toxoid intradermal skin test instead of the PPD intradermal [tuberculosis] skin test." *Complaint*, Ex. A. The medical record further states that Plaintiff "was called to report to the Health Services Department on Wednesday, January 3, 2001 at 0900 for evaluation and counseling . . . The [Plaintiff] verbalizes his understanding of the error and follow-up evaluation has been afforded to him." *Id.* This medical record illustrates that, as of January 3, 2001, Plaintiff knew or had reason to know that he was mistakenly given a tetanus skin test instead of the PPD intradermal skin test that he was supposed to receive. Therefore, pursuant to *Van Tu*, 364 F.3d at 1199, the statute of limitations on Plaintiff's complaint began to run on January 3, 2001. Thus, Plaintiff had two years from the date of January 3, 2001, or until January 3, 2003, to file a

Complaint regarding this injection. C.R.S. § 13-80-102(g).

Plaintiff filed his original *Bivens* action in the United States District Court for the Eastern District of Michigan on or about May 9, 2006 [Docket No. 1][2], more than two years after he knew or had reason to know of the existence and cause of the injuries which are the basis of his claims of cruel and unusual punishment. To the extent that Plaintiff seeks relief resulting from any alleged constitutional violation that occurred prior to January 3, 2003, those claims are barred by the applicable statute of limitations period absent some basis for avoiding the application of the statute.

Plaintiff makes several arguments in his attempt to avoid Defendants' statute of limitations affirmative defense. First, Plaintiff appears to disagree that the Colorado statute of limitations applies to his *Bivens* claim. Plaintiff states that "neither the Supreme court in Bivens nor U.S. Congress in 28 USC sec 1331 expressly imposed any color of state law statute of limitation on a Bivens federal question jurisdiction [sic]." *Response*, p. 5. Plaintiff cites *Industrial Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994) and *Sac & Fox Nation of Oklahoma v. Cuomo*, 193 F.3d 1162 (10th Cir. 1999), to support his argument that the Colorado statute of limitations does not apply to his *Bivens* claim. However, Plaintiff is incorrect that these cases are applicable to his argument. In *Industrial Constructors Corp.*, the

_____

[2]Plaintiff filed his Complaint in this Court on July 10, 2006. However, regardless of whether the Court uses the date of Plaintiff's initial filing (May 9, 2006) or the date the Complaint was filed in this Court (July 10, 2006), Plaintiff's Complaint was filed well outside the applicable time period established by C.R.S. § 13-80-102(g).

Tenth Circuit expressly held that "a *Bivens* action . . . is subject to the statute of limitations of the general personal injury statute in the state where the action arose." 15 F.3d at 968 (citation omitted). Further, the Court has reviewed *Sac & Fox Nation of Oklahoma*, 193 F.3d 1162, and fails to see its applicability. This case pertains to the burden of proof on the party invoking federal question jurisdiction, and is not relevant to the issue of *Bivens* claims and statutes of limitations. Contrary to Plaintiff's argument, it is clear and well-established that his *Bivens* action is subject to the two-year personal injury statute of limitations established by C.R.S. § 13-80-102(g). *Barreras*, 484 F.3d at 1236; *Industrial Constructors Corp.*, 15 F.3d at 968; *Garcia*, 731 F.2d at 651.

Plaintiff also appears to argue that equitable tolling should apply to his case to prevent the statute of limitations from running. He states, "defendants made the administrative remedy process unavailable . . . [which] creates an exception to any application of status [sic] of limitation." *Response*, p. 1. Like the statute of limitations issue, the applicability of equitable tolling is also governed by Colorado state law. *See Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) (citing *Board of Regents v. Tomanio*, 446 U.S. 478 (1980)). *See also Garrett v. Fleming*, 362 F.3d 692, 697 (10th Cir. 2004) (applying Colorado's equitable tolling rules to the statute of limitations in a *Bivens* action); *Delgado-Brunet v. Clark*, 93 F.3d 339, 342 (7th Cir. 1996) (applying Illinois personal injury statute and tolling laws to a *Bivens* action)).

First, when the dates provided in a complaint clearly demonstrate that the right

to sue has been extinguished, "the plaintiff has the burden of establishing a factual basis for tolling the statute." *Aldrich*, 627 F.3d at 1041, fn. 4 (citations omitted). Second, Colorado law only allows equitable tolling of a statute of limitations where "either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1099 (Colo. 1996). The application of equitable tolling calls for the court to make "an inquiry into the circumstances of the delay that prompted the statute of limitations to be invoked." *Shell Western E & P, Inc. v. Dolores County Bd. Of Com'rs*, 948 P.2d 1002, 1010 (Colo. 1997). Moreover, once the statute of limitations is raised as an affirmative defense, the burden shifts to the plaintiff to show that the statute has been tolled, as "[t]his accords with the rule that the person asserting a claim in equity bears the burden of furnishing satisfactory proof." *Garrett v. Arrowhead Improvement Ass'n*, 826 P.2d 850, 855 (Colo. 1992) (citations omitted).

In the first instance, where the plaintiff alleges that the defendant has wrongfully prevented the plaintiff from bringing a claim, the plaintiff "must assert facts sufficient to establish that the defendant's actions prevented the filing of a timely claim." *Olson v. State Farm Mut. Auto. Ins. Co.*, 2007 WL 4198354, *9 (Colo.App. 2007) (citing *Shell W. E & P, Inc.*, 948 P.2d at 1008). Thus, "[i]f there is no evidence to demonstrate that defendant engaged in any conduct which adversely affected the filing of the plaintiff's claim, a court may not apply the doctrine of equitable tolling." *Samples-Ehrlich v.*

*Simon*, 876 P.2d 108, 110 (Colo. App. 1994) (citation omitted).  In the second instance, where the plaintiff has invoked the "extraordinary circumstances" basis for equitable tolling, he must show that he made good faith efforts to pursue his claim.  *Dean Witter Reynolds, Inc.*, 911 P.2d at 1098.  That is, "[w]here a plaintiff has options on which he does not act, he has failed to act in good faith and equitable tolling cannot apply."  *Id.*

Plaintiff appears to invoke the first instance of equitable tolling, where he must show by satisfactory proof that "the defendant's wrongful conduct prevented compliance with the statutory periods . . . ."  *Id.* at 1096-1097.  Plaintiff alleges that he "filed this suit in the Eastern District of Michigan after these defendants obstructed all his efforts to exhaust administrative remedies in FCI-Florence and transferred him."  *Response*, p. 3.  Plaintiff further alleges that he "timely submitted a B.P. 9 grievance to his Unit Counselor at FCI-Florence against the use of him [sic] as a mediacl [sic] experiment and demanded to know the medical substance they trickishly injected into him.  The defendants intercepted said B.P. 9 grievance and ordered [Plaintiff] to the clinic . . . . They subsequently transferred him to further frustrate or obstruct his administrative remedy rights . . . They obstructed plaintiff [sic] all attempts to obtain B.P. 10 & 11 forms before he was transferred in June of 2001 . . . it would have been very futile for plaintiff to file the suit after the defendants obstructed the administrated [sic] grievance procedure."  *Response*, p. 6.

The moving party bears the initial burden, by reference to portions of pleadings,

depositions, answers to interrogatories and admissions on file, together with affidavits, to demonstrate the absence of genuine issues of material fact. *Celotex Corp.*, 477 U.S. at 325. In order to meet their initial burden, Defendants have submitted several affidavits. The first is the declaration of Deborah Locke. *Motion to Dismiss*, Ex. C. Ms. Locke has been employed as an attorney at FCI Florence since August of 2002. *Id.* at p. 1. Ms. Locke states that she has access to "official prisoner files, official manuals, and electronic records maintained within the FCC." *Id.* at p. 2. Ms. Locke further states that Plaintiff did not file any requests for administrative remedy complaining about the January 2, 2001 injection during the time he was incarcerated at the FCI Florence. *Id.* at p. 5. In fact, Ms. Locke attests that "although Plaintiff has filed 12 administrative remedies and/or appeals since his BOP incarceration, he did not begin filing grievances until August 2004, over 3-1/2 years after the incident complained of in the Amended Complaint took place." *Id.* Finally, she states that "Plaintiff did not properly use the BOP's administrative remedy process to grieve his complaint that any of the named defendants (or any of the staff at FCI Florence) violated his constitutional rights, or otherwise provided him improper medical treatment, by injecting him with the tetanus toxoid or other unknown medical substance instead of the PPD." *Id.*

Second, in directly responding to Plaintiff's allegations that they intercepted his administrative grievances, Defendants submitted the affidavit of Jeffrey Blank. *Reply*, Ex. A-2. Mr. Blank states that he has been employed as a Correctional Counselor at the FCI since 1999. *Id.* at p. 1. Mr. Blank explains that one of his duties as

16

Correctional Counselor is to issue and then retrieve from an inmate a Request for Administrative Remedy, also known as a "BP-9." *Id.* Mr. Blank states that he is familiar with Plaintiff, who was assigned to his case load from December 16, 1999 until June 7, 2001. *Id.* at 2. He further states, "[a]lthough [Plaintiff] claims he provided me with a BP-9 concerning an injection in 2001, I do not recall receiving such BP-9. Given the nature of the BP-9, I am certain I would have remembered such BP-9. . . . [H]ad I received such BP-9, I would have forwarded it to the Administrative Remedy Clerk . . . . Even if [Plaintiff] later withdrew the BP-9, it still would show up in SENTRY as having been filed." *Id.* Mr. Blank attests, "I would not, and did not, allow the defendants to 'intercept' any BP-9 or otherwise interfere with [Plaintiff's] ability to file such BP-9." *Id.* Finally, Mr. Blank states, "[i]n light of the fact that SENTRY does not show that [Plaintiff] filed any BP-9s at FCI Florence, let alone a BP-9 regarding an injection in 2001, I am confident that he did not submit to me a BP-9 regarding such issue." *Id.*

The party opposing the motion is required to beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 325. The main "evidence" that Plaintiff has to support his claim that Defendants obstructed him from using the administrative grievance process is his "declaration," filed along with his Response, although docketed separately [Docket No. 25]. Plaintiff states, "after I submitted a B.P. 9 grievance to the Unit Counselor, the named defendants intercepted it . . . and all my attempts to get B.P. 10 & 11 forms were frustrated by the defendants . . . ." Docket No. 25, p. 1. However, I

note that Plaintiff's "declaration" does not make any reference to any of the statements asserted therein as being attested under oath, as required by Fed. R. Civ. P. 56(e). Therefore, Plaintiff's unsworn affidavit is not sufficient to create a genuine issue as to any material fact, as it may not be considered by this Court. *See, e.g., Hayes v. Marriott*, 70 F.3d 1144, 1148 (10th Cir. 1995) (holding that unsworn statements did not warrant the grant of summary judgment); *Nissho-Iwai Am. Corp. V. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1998) (holding that a notarized affidavit which is "neither sworn nor its contents stated to be true and correct nor stated under penalty of perjury . . . is incompetent to raise a fact issue precluding summary judgment"); *Gallegos v. Swift & Co.*, 237 F.R.D. 633, 641 (D.Colo. 2006) (finding that courts "need not consider evidence that does not conform to these requirements" of Fed.R.Civ.P. 56(e)).

Alternatively, Plaintiff's sworn complaint may be treated as a proper affidavit. *Hayes*, 70 F.3d at 1148 (citing *Hall*, 935 F.2d at 1111). However, while in his Complaint Plaintiff makes numerous allegations regarding his injection, he does not allege that Defendants obstructed or thwarted his use of the administrative grievance process. *Complaint*, p. 4-6. In examining Plaintiff's other evidence and pleadings, he alleges that "[t]he record clearly shows" that he timely submitted a B.P. 9 to his counselor in response to the January 2, 2001 injection. *Reply*, p. 6. However, Plaintiff does not state where in the record it "clearly shows" that he submitted a B.P. 9 grievance. A review of the entire record before the Court establishes that Plaintiff has not provided a copy of the B.P. 9 grievance that he allegedly submitted in January of

18

2001 regarding his use as a medical experiment. Indeed, the majority of documents that Plaintiff has attached to his Complaint relate to a fungal toenail infection that he apparently contracted in or around 2003. *See, e.g.,* Ex. C ("I've had an infection in my toenail for about 1 year and would like to get treated"); Ex. D (diagnosing "Tinea Unguium", a fungal toenail infection); Ex. F (BP-229, dated January 14, 2005, responding to Plaintiff's allegations regarding his fungal toenail infection); Ex. G (Regional Administrative Remedy Appeal, dated April 14, 2005, responding to Plaintiff's allegations of insufficient medical care for his fungal toenail infection). I note that any claims regarding a fungal toenail infection that Plaintiff allegedly contracted in or around 2003 have already been dismissed for failure to state a claim upon which relief can be granted by the United States District Court for the Eastern District of Michigan [Docket No. 1; filed June 20, 2006].

Plaintiff's Surreply makes numerous references to Plaintiff's "Motion to Reinstitute Bivens Law Suit upon Exhaustion of Administrative Remedy" ("Motion to Reinstitute") [Docket No. 9; filed February 16, 2007] and the exhibits attached thereto. In support of his statement that "Defendants repeatedly tried to have Plaintiff waive his right to administrative remedies procedures, and accept the Defendants verbal apology," Plaintiff cites to Exhibit A of his Motion to Reinstitute. *Surreply,* p. 1 (emphasis in original). Exhibit A of Plaintiff's Motion to Reinstitute is the same medical record, dated January 3, 2001, attached as Exhibit A to his Complaint. While this record illustrates that Plaintiff refused to sign this medical record when requested to do

so by prison officials, it does not demonstrate that Defendants attempted to have Plaintiff "waive" his right to use the administrative grievance process, nor that they "thwarted" or "delayed Plaintiff's administrative remedy procedures." *Surreply*, pgs. 1-2. The remainder of exhibits attached to Plaintiff's Motion to Reinstitute show that, at least as of September 5, 2006, Plaintiff was attempting to exhaust his administrative remedies regarding the injection that occurred on January 2, 2001. *See* Ex. B (Mail receipt dated September 5, 2006); Ex. C (Appeal dated October 22, 2006); Ex. D (Rejection of October 22, 2006 Appeal dated October 30, 2006). However, these exhibits simply fail to demonstrate that Plaintiff attempted to submit a BP 9 in January of 2001 and was thwarted by Defendants.

Plaintiff cites to *Carter v. Newland*, 441 F.Supp.2d 208, 211 (D.Mass. 2006), to support his claim that the actions he alleges on the part of Defendants are sufficient to protect his case from dismissal. *Surreply*, p. 2. In *Carter*, the defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), alleging that the inmate failed to exhaust his available administrative remedies. 441 F.Supp.2d at 210. The *Carter* inmate then alleged that the defendants obstructed his use of the administrative grievance process, as his counselor tore up his paper work. *Id.* at 211. This case is inapplicable to the case at hand for several reasons. First, the inmate in *Carter* had actual copies of the administrative grievances that he previously submitted and filed them with the Court. 441 F.Supp.2d at 211. In the instant case, while Plaintiff has alleged that he filed administrative grievances in January of 2001, he has never

20

provided copies of such grievances to the Court or any actual evidence that would allow the Court to conclude that they were filed. Further, the *Carter* court declined to dismiss that case on the grounds that the defendants had not yet responded to the assertion that they had obstructed the plaintiff's access to the administrative grievance process. *Id.* The *Carter* court found that "[t]here is a genuine fact question as to whether Carter's attempt to [exhaust administrative remedies] was thwarted by either government incompetence or misconduct." *Id.* In the instant case, Defendants have clearly responded to Plaintiff's allegations that they obstructed his use of the administrative process. In turn, Plaintiff has provided no more than his unsupported conclusory allegations, which are not sufficient to create a genuine issue of material fact. *Simons,* 129 F.3d at 1388-89. Plaintiff has failed to "assert facts sufficient to establish that the defendant's actions prevented the filing of a timely claim," which prevents the application of equitable tolling to the statute of limitations in this case. *Olson*, 2007 WL 4198354 at *9.

Finally, I note that Plaintiff was incarcerated at FCI Florence from October 21, 1999 until June 7, 2001. *Motion to Dismiss*, Ex. C, p. 4. He was transferred from FCI Florence to FCI Pekin, in Illinois, in June 2001. *Id.* He was transferred from FCI Pekin to FCI Milan, in Michigan, on June 3, 2004, where he remains incarcerated today. *Id.* Even assuming that Plaintiff's allegations regarding Defendants' hindering his use of the administrative process are true, Plaintiff does not explain why he failed to use the administrative grievance process and the court system after he left FCI Florence in

21

June of 2001. After June of 2001, Plaintiff was presumably outside of Defendants' control, as they no longer had the power to hinder his use of the administrative process. Indeed, as of June of 2001, Plaintiff had until January 3, 2003, or eighteen months and three days outside of Defendants' control within which to use the administrative grievance process and file his *Bivens* complaint within the relevant statute of limitations period. Instead, Plaintiff did not begin using the administrative grievance process until August of 2004. *Motion to Dismiss*, Ex. C, p. 5. Even if Plaintiff had met his burden of proof to show that tolling would apply to his case, he does not explain his failure to file any administrative grievances until 2004, and his reasons for waiting to file his lawsuit until 2006.

## III.    Conclusion

I have viewed the record "in the light most favorable" to Plaintiff, the non-movant. *Thournir,* 909 F.2d at 409. I find that the pleadings and the affidavits on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson,* 477 U.S. at 248-50; *Concrete Works, Inc.,* 36 F.3d at 1517. The evidence is not such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. As Plaintiff has provided no more than his unsupported conclusory allegations and inadmissible evidence, he has not created a genuine issue of fact. *See Simons,* 129 F.3d at 1388-89.

Plaintiff's claims are barred by the statute of limitations. Plaintiff's Complaint alleges conduct that occurred in January, 2001. Plaintiff initiated his Michigan action in May 9, 2006, well outside the two-year statute of limitations set forth in C.R.S. § 13-80-102(g). Therefore, to the extent Plaintiff seeks relief resulting from any alleged constitutional violation that occurred prior to January 3, 2003, those claims are barred by the applicable statute of limitations period and should be dismissed with prejudice.

Based on the findings above, the Court finds it unnecessary to address Defendants' additional grounds for dismissal.

For the reasons stated above, I respectfully RECOMMEND that Defendants' Motion to Dismiss [Docket No.21] be **GRANTED** and Plaintiff's Complaint be **DISMISSED with prejudice**.

FURTHER, IT IS **ORDERED** that pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *In re Key Energy Resources Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real*

*Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

BY THE COURT:

__s/ Kristen L. Mix_____

United States Magistrate Judge

DATED: January 23, 2008